STATE of Missouri, Respondent,

v.

Anthony WALLACE, Appellant.

No. ED 97984.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 4, 2013.

Timothy Forneris, St. Louis, MO, for appellant.

Chris Koster, Gregory L. Barnes, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Chief Judge.

### Introduction

Anthony Wallace (Appellant) appeals his convictions of assault in the first degree, robbery in the second degree, attempted forcible rape, attempted forcible sodomy and kidnapping, and his subsequent sentences. In his sole point on appeal, Appellant argues the trial court's determination that Appellant was competent to stand trial was unsupported by substantial evidence. We affirm.

### Background

The sufficiency of the evidence to support Appellant's convictions is not contested on appeal. The evidence at trial established that Appellant approached a car that was parked outside a bar with the engine running. A woman (Victim) who had been inside the bar earlier was sleeping in the car, waiting for her boyfriend to pick her up. A security video showed Appellant trying to open the car door and knocking on the window. Appellant walked away and came back with a large object, which he used to break the driver's side window. He got in the car and drove away.

Victim woke up to the sound of the window breaking. She asked Appellant to let her out of the car and offered him money. He punched her in the face several times, breaking her nose. He then took out his penis and tried to force Victim's head toward it. Victim jumped out of the moving car and ran up some stairs toward what she thought was a church. She had nowhere to go and ran back down the stairs, where Appellant grabbed her and forced her back into the car. He got back in the car and began to drive again.

Victim believed the only way to get out of the car was to wreck it, so she grabbed the steering wheel and yanked it. The car hit a parked sport utility vehicle. Victim got out and tried to run away, but Appellant caught up to her in a gangway. A man who lived nearby saw Appellant pulling on Victim's clothes and heard Victim screaming. The man called 911.

Police arrived and found Victim naked and semi-conscious in the gangway. They found her car less than a block away. Police seized a yellow skull cap that was inside the car. A DNA analyst identified the DNA of three individuals on the cap, and Appellant was the major contributor. The DNA analyst also matched Appellant's DNA to DNA recovered from the driver's side airbag of Victim's car. Victim also viewed a photographic lineup and chose Appellant's photograph.

Before trial, Appellant's counsel filed a motion to declare Appellant incompetent to stand trial. Appellant did not request a court-ordered evaluation, but rather offered the report of Dr. Rachael Springman to support a finding of incompetency. The trial court ordered an evaluation by Dr. Tracey Fintel, a forensic examiner with the Missouri Department of Mental Health. The trial court then held a competency hearing.

At the hearing, both doctors testified that they reviewed Appellant's special school district records, his health and criminal records, as well as the police reports in the present case. Both evaluated Appellant in person, and both concluded that Appellant had mild mental retardation and antisocial personality disorder.

Dr. Springman testified that antisocial disorder is a typical diagnosis in criminals, estimating that 80 percent of the prison population would meet the criteria for that disorder. Dr. Springman administered three objective tests, one of which was called Competence Assessment for Standing Trial for Defendants with Mental Re-

tardation (CAST–MR). In the first part of the test, called understanding case events, Appellant answered 95 percent of the questions correctly, which is consistent with a person who is mentally competent. That part of the test evaluated whether Appellant could recount the details of his arrest in a clear and coherent manner, and Dr. Springman concluded that he could. The second part of the test was called skills to assist the defense, which addressed the function of an attorney and how to assist in defense. Appellant scored 60 percent, which falls between competency and incompetency. On the third part of the test, basic legal concepts, Appellant scored 64 percent, which was also in between competency and incompetency. Dr. Springman found Appellant understood the role of the prosecutor and the defense attorney, as well as what it means to plead guilty and not guilty, but he was confused regarding the concepts of maximum and minimum sentences.

Based on the tests and her interview with Appellant, Dr. Springman believed that Appellant was not competent at the time of her evaluation. She found that he had difficulty understanding several things: the role of courtroom personnel, the relation of the paperwork containing his charges to the reality of the charges, the weight of DNA evidence and its effect on options for approaching his defense, the meaning of the word "attempted" in some of the charged crimes, and some of the statements police officers made during Appellant's interrogation. She did not believe he had the ability to understand court proceedings. However, she believed he could be restored to competency with training and education.

Dr. Fintel conducted a forensic interview of Appellant, but she did not administer any objective competency tests. She evaluated Appellant's memory for recent events, attention, and concentration, and found no issues. When discussing Appellant's criminal charges with him, Dr. Fintel believed Appellant understood the charges against him and appreciated the seriousness of them. She had reviewed Dr. Springman's report, and Dr. Fintel said Appellant's understanding of the roles of court personnel seemed improved from the time he saw Dr. Springman. He understood legal concepts even if he did not know the terms for them. Dr. Fintel observed that Appellant was dissatisfied with his attorney and did not trust his attorney, but Appellant knew he needed to tell his attorney everything truthfully in order to be represented adequately. Appellant also understood the role of witnesses, that he had the option of testifying or not testifying, and the role of the jury. Dr. Fintel concluded that Appellant did not lack mental fitness to proceed.

The trial court considered the testimony of Drs. Springman and Fintel, as well as both of their reports, and concluded Appellant was competent to stand trial. Appellant waived his right to a jury trial. After a bench trial, the trial court found Appellant guilty of one count of assault in the first degree, one count of robbery in the second degree, one count of attempted forcible rape, one count of attempted forcible sodomy, and one count of kidnapping. The trial court sentenced Appellant to concurrent sentences of 30 and 15 years on the first two counts, to be served consecutively with concurrent life sentences for the attempted rape and sodomy counts, and 15 years for the kidnapping count.

This appeal follows. In his sole point on appeal, Appellant argues that the trial court erred in determining Appellant was competent to stand trail.

### Standard of Review

■ A trial court's finding that a defendant is competent to stand trial is a

factual finding that will not be overturned unless there is no substantial evidence to support it. *State v. Whitt,* 330 S.W.3d 487, 493 (Mo.App. E.D.2010). We accept as true all evidence and reasonable inferences tending to support the trial court's findings. *Id.* The accused has the burden to prove incompetence. *Id.*

### Discussion

An accused is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *State v. Elam,* 89 S.W.3d 517, 521 (Mo.App. W.D. 2002) (quoting *State v. Wise,* 879 S.W.2d 494, 507 (Mo. banc 1994)). The accused is presumed to have mental competency to proceed, and the burden is on the accused to prove incompetence by a preponderance of the evidence. Section 552.020(8), RSMo. (Supp.2012). The presence of some mental retardation or defect does not automatically render a person incompetent. *Baird v. State,* 906 S.W.2d 746, 750 (Mo.App. W.D.1995); *State v. Petty,* 856 S.W.2d 351, 354 (Mo.App. S.D.1993).

Appellant argues that he proved by a preponderance of the evidence that he was incompetent to stand trial. He asserts that Dr. Fintel's evaluation of him was shorter and less structured than Dr. Springman's and was based only on Dr. Fintel's subjective observations; thus it did not provide an adequate basis for her conclusion that he was competent. We disagree.

Appellant did not dispute that Dr. Fintel was qualified as an expert to give her opinion. Despite their differing evaluation methods, both doctors agreed regarding Appellant's diagnoses of mild mental retardation and antisocial disorder. Both doctors also believed he had some limita-

tions in his understanding of the court process and his specific case, but they disagreed as to whether these limitations rendered Appellant unable to understand the proceedings against him or assist in his defense. Dr. Springman's objective tests did not establish Appellant was mentally incompetent to stand trial. Rather, they established at most that Appellant was somewhere in between competent and incompetent. Both doctors agreed that he could be competent to stand trial; they simply disagreed as to whether he had the present ability to do so.

These facts distinguish Appellant's case from those he cites. One of these is *State v. McCurry–Bey,* in which the trial court disregarded both the experts' opinions and the defendant's history, all of which weighed against a competency finding. 298 S.W.3d 898, 903 (Mo.App. E.D.2009). This Court reversed, finding that rather than weighing conflicting evidence, the trial court had disregarded the evidence and based its conclusion on its own observations of the defendant. *Id.* On that record, this Court found the defendant had proven by a preponderance of the evidence that he was incompetent to proceed. *Id.*

In contrast, here, while the doctors agreed regarding Appellant's history and diagnoses, they disagreed regarding whether Appellant's mental capacity to stand trial was present at the times of their interviews. The trial court weighed the evidence before it and determined Appellant was mentally competent to stand trial. *See Petty,* 856 S.W.2d at 353–54 (affirming trial court's finding of competency among evidence that two experts agreed defendant mildly mentally retarded but disagreed as to competence); *see also Elam,* 89 S.W.3d at 522–23 (affirming competency finding based on trial court's belief of certain experts over others). The trial court is in the best position to weigh the

evidence, and it was within the court's province to resolve this conflict in the evidence. *Id.* at 523; *Petty,* 856 S.W.2d at 354. Point denied.

### Conclusion

We find there was substantial evidence on the record from which the trial court could conclude Appellant was mentally competent to stand trial. We affirm.

ROBERT G. DOWD, JR., and ROBERT M. CLAYTON III, JJ., concur.