# IN THE COURT OF APPEALS OF IOWA

No. 24-0256
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLARENCE EDWARD REED JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


        A criminal defendant appeals his conviction and sentence for first-degree murder. **CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**


        Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


        Considered without oral argument by Tabor, C.J., Ahlers, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

Clarence Reed was accused of stabbing his girlfriend to death and was later found guilty of first-degree murder. In this appeal, Reed argues the district court violated his due process rights when it found probable cause to question his competence to stand trial but, after a psychological evaluation, resumed his proceedings without an evidentiary hearing or formal finding of competency. He also argues that the district court imposed an illegal sentence when it ordered him to participate in a "victim offender dialogue program." Under the unique facts of this case, we find reinstating the criminal proceedings did not violate Reed's constitutional rights. However, we agree the court had no authority to order a victim-offender dialogue. We therefore affirm Reed's conviction, vacate his sentence in part, and remand for entry of a corrected sentencing order.

## I.     Factual Background and Proceedings

Early in the morning on February 26, 2022, Reed called 911 and told the dispatcher "there's a chick laying here dead." He then hung up as a medic tried to talk him through CPR. When first responders arrived at Reed's apartment, they found the decedent—later identified as Reed's girlfriend—lying face down in a pool of blood. The victim had multiple stab wounds, as well as a one-inch-deep incision passing through her windpipe, esophagus, and jugular veins. Reed was covered in blood.

After observing the scene, officers handcuffed Reed and took him to the police station for questioning. Reed alleged the victim had swung a hammer at him, so he grabbed a knife and stabbed her. While recounting the fight, Reed told officers he "went overboard" and "blacked out." He also told them that he was

diagnosed with paranoid schizophrenia. The State charged Reed with first-degree murder.

Early in the proceedings, Reed's counsel moved for an evaluation of Reed's competency pursuant to Iowa Code section 812.3 (2022). In support of the motion, counsel informed the court that Reed was diagnosed with schizophrenia and had been hospitalized "very close in time" to his arrest. Counsel also divulged that Reed had been demonstrating "some behaviors which will make it difficult for him to effectively assist in his defense," including "occasions where I go to visit Mr. Reed and he decides that he doesn't want to talk to me that day." Relying on counsel's statement, the district court found probable cause that Reed was incompetent. It suspended further proceedings and ordered an evaluation.

A Des Moines psychologist met with Reed in July 2022. In a report filed with the court, the evaluator noted that Reed was "currently on psychiatric medications" for his schizophrenia and was "not experiencing obvious effects of psychosis." According to the evaluator, Reed understood his charge, comprehended the nature and stakes of the criminal proceeding, and could assist in his defense—all supporting the evaluator's conclusion that Reed met "the minimum criteria for competency." Following an unreported hearing, the district court deemed Reed competent to stand trial and reinstated the proceedings. The court ordered that Reed's psychiatric treatment continue during the course of the case.

About three months later, Reed's counsel moved for another competency evaluation. At a second probable-cause hearing, counsel informed the court that Reed had refused additional visits from counsel and a mental health expert

retained for Reed's defense. Counsel also noted the expert's concerns with the "thoroughness and accuracy" of Reed's prior evaluation. Both parties requested that Reed's second evaluation take place at the Iowa Medical and Classification Center (IMCC). The court granted the request. However, it noted that if Reed agreed to meet with his defense expert for "essentially an evaluation, . . . then perhaps the IMCC evaluation may not need to occur."

The case halted for the next two months as Reed awaited a new competency evaluation. A virtual interview with an IMCC psychiatrist was eventually scheduled for January 2023. But when that date arrived, Reed "refused to leave his cell." In a letter to the court, the IMCC evaluator noted that Reed's psychiatric history was "not strongly suggestive of a primary psychotic disorder" but that "[w]ithout any sort of direct interview it is impossible to determine with any degree of certainty whether or not Mr. Reed is competent to stand trial." The evaluator recommended Reed's admission to the IMCC psychiatric hospital so that an evaluation could be conducted in person.

A few days later, the parties convened for an unreported status hearing. According to a subsequent order, Reed's counsel asked for "further time to have the defendant evaluated." The district court granted that request, but its written order gave no indication as to whether Reed's next evaluation was to come from the IMCC, a defense expert, or some other provider. The court also set a "contested competency hearing" for February 10, noting that "[i]f the parties [could] not reach an agreement as to [Reed]'s competency" by that date, "they should be prepared to present evidence."

The new hearing date came and went. The record is silent as to why no hearing occurred. On February 20, defense counsel filed a "notice to the court" stating "that an evaluation has taken place and that the Defendant has no further evidence to present with regard to the issue of competency." The notice concluded by asking the court to "proceed on the record before it and enter an appropriate order." No evaluation report was ever filed. The same day, the parties submitted a joint motion to continue the approaching trial date, citing a need for more time to complete expert discovery.

On February 21, the court entered an order granting the parties' joint requested continuance. From there, the case proceeded as normal. Neither the parties nor the court expressed any further concern regarding Reed's competency. Following an August 2023 bench trial, the court found Reed guilty of first-degree murder. He was sentenced to life in prison.

Reed now appeals.

## II.     Due Process

Reed contends the district court's second probable-cause finding raised a question of competency that was never adequately resolved, resulting in an unconstitutional conviction. His challenge is twofold. First, Reed asserts the district court violated his due process[1] rights when it deviated from the procedures

---

[1] Reed does not specify whether he asserts a violation of his state or federal due process rights. Because he relies exclusively on authority interpreting the federal constitution, we presume that is the basis for his challenge. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) cmt.; *State v. Einfeldt*, 914 N.W.2d 773, 780 n.2 (Iowa 2018) (applying federal constitutional standards in response to a defendant's "generic reference" to due process rights "present in both the Iowa and United States Constitutions").

of Iowa Code chapter 812 and reinstated his criminal proceedings without an evidentiary hearing or formal finding of competency. Second, Reed contends he was, in fact, unable to assist in his defense and so his right to a fair trial was denied. We address these claims in turn. Our review is de novo. *State v. Brown*, 16 N.W.3d 288, 295 (Iowa 2025).

### A.      Competency Procedure

Due process forbids the prosecution of a defendant who lacks the mental capacity to assist in their defense. *Brown*, 16 N.W.3d at 292. For this reason, state courts must follow "procedures adequate to protect a defendant's right not to be tried or convicted while incompetent." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (explaining a failure to follow adequate state procedures is an independent violation of the right to a fair trial); *see also Medina v. California*, 505 U.S. 437, 449 (1992) (noting a state must "provide[] a defendant access to procedures for making a competency evaluation"). State procedures are constitutionally adequate when they provide for an evidentiary hearing to resolve "bona fide" doubts about a defendant's competency. *Drope*, 420 U.S. at 172–73 (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)).

Our legislature has prescribed a "step-by-step process for raising, regulating, and resolving" competency questions. *Brown*, 16 N.W.3d at 295. Under Iowa Code chapter 812, a defendant or their attorney may request—at any stage of a criminal proceeding—that the case be paused for an evaluation of the defendant's competency. Iowa Code § 812.3(1). The defendant must allege "specific facts" that suggest they are "suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the

proceedings, or assisting effectively in the defense." *Id*. If the court finds those allegations establish "probable cause" to question the defendant's competency, then it must "suspend further criminal proceedings and order the defendant to undergo a psychiatric evaluation." *Id.* § 812.3(2).

After an evaluation, the court must hold a competency hearing, where the defendant has the right to counsel, the right to cross-examine witnesses, and the right to present evidence. *Id.* § 812.4(1), (2). If, after "receiv[ing] all relevant and material evidence offered at the hearing," the court finds the defendant is competent to stand trial, then "the court shall reinstate the criminal proceedings." *Id.* § 812.5. But if the court finds the defendant is incompetent, then the proceedings must be indefinitely stayed while the defendant is referred for rehabilitative treatment. *See id.* § 812.5(2). The successive sections of chapter 812 describe the treatment process and dispositional options for defendants whose competency cannot be restored. *See generally id.* §§ 812.6–.9; *Brown*, 16 N.W. 3d at 296–97.

Under this statutory scheme, resolving a competency challenge often requires the district court to make two determinations. First is the question of probable cause, where the court must decide whether a defendant's allegations raise enough doubt about competency to justify further evaluation. *See* Iowa Code § 812.3. Second is the question of competency itself, which is to be resolved with the benefit of a professional evaluation and full evidentiary record. *See id.* § 812.5. Our supreme court has warned against confusing these separate steps. *See State v. Einfeldt*, 914 N.W.2d 773, 782 (Iowa 2018). A finding of probable cause is not

a "definitive determination of competency" but rather a finding that "a *subsequent* hearing on the question" is necessary. *Id.*

In this case, Reed contends he was denied due process when the district court found probable cause to question his fitness to stand trial, only to re-commence proceedings without an evidentiary hearing or formal finding of competency. We note from the start that the procedure Reed challenges was invited by his trial counsel, who made no objection when the court reinstated Reed's case. Those facts would typically foreclose appellate relief. *See State v. Tucker*, 982 N.W.2d 645, 653 (Iowa 2022) ("Litigants may not raise issues— including constitutional issues—for the first time in an appeal."). However, Reed's claim of error is unique. Our supreme court has held that a defendant "may, without preserving error, challenge . . . the district court's failure to hold a competency hearing." *State v. Newman*, 970 N.W.2d 866, 870 (Iowa 2022). This is because "an incompetent defendant is in no position to preserve error in the district court." *Id.*

Still, we must be careful not to overextend this rule. While Reed may challenge his competency proceedings on constitutional grounds, we are aware of no authority permitting him to assert a *statutory* violation for the first time on appeal. *See State v. Wilkins*, 909 S.E.2d 215, 220 (N.C. 2024) (explaining "the constitutional and statutory rights to a competency hearing are not equivalent"). To the extent Reed contends the district court erred by "fail[ing] to follow the safeguards outlined in Iowa chapter 812," we deem that argument unpreserved. The only question before us is whether the district court observed a "constitutionally adequate" procedure in resolving Reed's second competency

challenge. *Drope*, 420 U.S. at 172; *see also McManus v. Neal*, 779 F.3d 634, 659 (7th Cir. 2015) ("A competency hearing may be constitutionally adequate yet fall short of [state] statutory requirements.").

"[A] meaningful opportunity to be heard" is an essential component of due process. *Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 467 (Iowa 2016) (citation omitted). Generally speaking, that opportunity may be waived. *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971). However, as both parties point out, the rules of waiver are more limited in the competency context. The Supreme Court has deemed it "contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate*, 383 U.S. at 384; *see also Einfeldt*, 914 N.W.2d at 779 ("[A] defendant cannot waive the due process right to competency."). Extrapolating from that principle, Reed argues a potentially incompetent defendant cannot waive the right to an evidentiary hearing. We disagree.

Although it is clear that a judicial determination cannot be waived when there is bona fide doubt about a defendant's competency, *Pate* did not suggest a threshold showing of doubt disqualifies the defendant from all agency in the competency proceedings. Rather, a defendant's suspected incompetency simply means the court must "depend to some extent on counsel to bring issues into focus." *Drope*, 420 U.S. at 176–77. Indeed, twenty-six years after *Pate*, the Supreme Court held that states may require a defendant to prove their own incompetency—even after a preliminary showing of doubt. *Medina*, 505 U.S. at 446. This is partly because "the defendant is entitled to the assistance of counsel" during the competency proceedings. *Id.* at 450. In our view, if due

process permits a defendant to bear the burden of proof on the issue of competency, then there is nothing unconstitutional about allowing the defendant—with the assistance of counsel—to decide whether and how to carry that burden.[2] "[I]t is enough that the State affords the criminal defendant . . . a reasonable *opportunity* to demonstrate that he is not competent to stand trial." *Id.* at 451 (emphasis added).

Other courts have likewise concluded that statutory competency procedures are waivable. *See State v. Ary*, 411 So. 3d 972, 981 (La. Ct. App. 2025) (observing that, under Louisiana law, "a defendant may waive a full hearing and submit competency based on the uncontroverted reports," provided that "the ultimate decision regarding competency" remains with the trial court); *State v. McHargue*, 239 N.E.3d 423, 431 (Ohio Ct. App. 2024) (finding under Ohio law that "a defendant may stipulate to the contents of the competency report and may also waive the competency hearing, or at least may elect not to introduce evidence"); *State v. Garcia*, 994 N.W.2d 610, 671–72 (Neb. 2023) (finding a defendant waived his right to a full competency hearing); *State v. Mette-Njuldnir*, 465 S.W.3d 521, 530–31 (Mo. Ct. App. 2015) (noting a hearing under Missouri's competency statute is not required when the professional evaluation is not contested); *Dougherty v. State*, 149 So. 3d 672, 678 (Fla. 2014) (explaining that,

---

[2] We note this conclusion is consistent with our supreme court's view that probable cause under section 812.3 is a "relatively low threshold." *Einfeldt*, 914 N.W.2d at 782. Because the bar for obtaining a competency evaluation is not high, there will often be cases in which the evaluation settles all parties' doubts about a defendant's competency. If courts were required to press forward with a mandatory evidentiary hearing in those circumstances, then they may think twice before finding probable cause—putting "the proverbial cart before the horse." *Id.*

under Florida law, the parties may agree for the trial court to "decide the issue of competency on the basis of the written reports alone," although they may not stipulate to the ultimate question of competency); *State v. Heddrick*, 215 P.3d 201, 206 (Wash. 2009) (en banc) ("[S]tatutory competency procedures may be waived . . . .").

Here, Reed and his attorney clearly waived Reed's right to a full evidentiary hearing by filing a notice that invited the court to "proceed on the record before it." This request came after a nearly four-month procedural delay, during which Reed was offered one evaluation and provided an extension of time to obtain another. Nobody disputes that Reed was provided a full opportunity to prove his incompetency. Given his unequivocal waiver of further procedures, the district court's decision to resolve his second competency challenge without an evidentiary hearing did not offend due process.

As for Reed's complaint that the district court never "enter[ed] any order that the defendant was in fact competent to stand trial," we disagree as a matter of fact. In her motion waiving Reed's hearing, defense counsel asked the court to "enter an appropriate order." Under our statute, the appropriate disposition upon a finding of competency is to "reinstate the criminal proceedings." Iowa Code § 812.5(1). Here, the court did so by entering an order resetting the trial date in accordance with the parties' joint request.[3] We find this record sufficient to conclude the district

---

[3] It would have undoubtedly been the better practice for the court to enter an express ruling on Reed's fitness to proceed. Indeed, we question whether such an order might have averted Reed's present challenge altogether. However, because "there is a presumption of regularity in trial proceedings," *State v. McFarland*, 287 N.W.2d 162, 164 (Iowa 1980), we decline to construe the district court's silence as a failure to determine Reed's competency.

court satisfied its constitutional duty to "determine [Reed's] capacity to stand trial." *Pate*, 383 U.S. at 384; *see also McHargue*, 239 N.E.3d at 431–32 (noting that, "although the trial court must ensure a defendant is competent before accepting a plea," there is no requirement as to "the type or manner of findings the trial court must make").

### B.     Competency Determination

Reed asserts that even if the district observed constitutionally adequate procedures, its competency finding was "not supported by the record." He argues that the "only relevant evaluation in front of the court" was the inconclusive letter from the IMCC evaluator, which could not rule out the possibility of Reed's incompetence. He also points to defense counsel's professional statements at the probable cause stage. Reed contends that, because the State "presented no evidence" of competency, the district court erred by reinstating his proceedings.

In reviewing a competency determination, the "critical question" we must answer "is whether the defendant ha[d] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he ha[d] a rational as well as factual understanding of the proceedings against him." *Newman*, 970 N.W.2d at 871 (cleaned up). We may look to the "totality of the circumstances." *State v. Pedersen*, 309 N.W.2d 490, 495 (Iowa 1981). Expert opinions and the defendant's in-court demeanor are two relevant considerations. *See State v. Veal*, 930 N.W.2d 319, 337 (Iowa 2019). The professional representations of defense counsel also play an important role. *Einfeldt*, 914 N.W.2d at 780; *accord Medina*, 505 U.S. at 450 ("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense.").

We presume a defendant was competent to stand trial.  *Pedersen*, 309 N.W.2d at 496.  It is the defendant's burden to prove otherwise.  *Id.*

With these standards in mind, we have no difficulty upholding the district court's competency determination.  Reed's first evaluator opined that he "did not appear to have any significant psychiatric barriers that would interfere in his capacity to effectively assist in his defense."  Based on that report, the district court deemed him competent to stand trial in July 2022.  When Reed renewed his challenge three months later, it was his burden to bring forward new evidence of incompetency.  *See State v. Lyman*, 776 N.W.2d 865, 874 (Iowa 2010) (explaining "once a court finds a defendant competent to stand trial, the presumption of competency continues unless and until the defendant produces new evidence to the contrary"), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016).  Reed failed to make that showing.

As of February 2023, the only new evidence before the court was an inconclusive letter from the IMCC evaluator and counsel's statement that Reed had refused to cooperate with the preparation of his defense.[4]  With respect to the letter, we find little evidence of incompetency.  The IMCC evaluator declined to offer any opinion on Reed's fitness to stand trial.  *See id.* ("If the evidence is in equipoise, the presumption of competency prevails.").  And as for counsel's statements at the October 25, 2022 probable-cause hearing, Reed ultimately presented no evidence to establish whether his refusal to meet with his defense

---

[4] Although Reed's attorney asserted during the probable cause hearing that a defense expert had questioned the "thoroughness and accuracy" of Reed's first evaluation, those concerns were never elaborated.

team was a matter of illness or obstinance. Instead, on February 20, 2023, his attorney asked the court to proceed on the existing record, explaining that "an evaluation ha[d] taken place and that the Defendant has no further evidence to present with regard to the issue of competency." The inference from this statement is that counsel's concerns with Reed's cooperation had been resolved.

Although there is no dispute that Reed had previously been diagnosed with schizophrenia, that does not mean he was incompetent at the time of his trial or conviction. *Einfeldt*, 914 N.W.2d at 783 n.3 (noting "past history of mental illness, without more, is insufficient," because the "question is one of present competency, not past malady"); *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991) (stating "the mere presence of mental illness does not equate to incompetency to stand trial"). Reed's first evaluator noted Reed was successfully managing his symptoms with psychiatric medication, and the district court ordered Reed's treatment to continue indefinitely. During a pretrial hearing in August 2023, the court confirmed that Reed had been taking his medications as prescribed. Reed's interactions with the court during that colloquy and others show he was lucid, communicative, and well-oriented.

On our de novo review, we find nothing in the record to overcome the presumption of competence. Much to the contrary, the evidence affirmatively suggests that Reed maintained the capacity—although perhaps not always the desire—to effectively assist in his defense throughout the duration of the criminal proceedings. We therefore find no violation of Reed's due process rights. His conviction must stand.

### III.     Victim Offender Dialogue

In a separate claim of error, Reed contends the district court exceeded its sentencing authority by ordering him to participate in a "Victim Offender Dialogue" as part of his sentence.  According to the court's sentencing order, the purpose of this dialogue would be to "allow the victim to inform Defendant of the consequences of the crime, to determine the amount of victim pecuniary damages . . . owed, and to establish a payment schedule."

Sentencing courts "may only impose punishment authorized by the legislature within constitutional constraints."  *State v. Louisell*, 865 N.W.2d 590, 598 (Iowa 2015).  A sentence imposed without statutory authority is illegal and void.  *Id.*  For non-juvenile defendants convicted of first-degree murder, a sentence of life imprisonment is mandatory.  *See* Iowa Code §§ 707.2(2), 902.1(1).  Nothing in the code permits the sentencing court to fashion an alternative or additional remedy.  *See id.* §§ 901.5, 902.1.  Here, the State concedes that the court exceeded its authority by ordering a victim-offender dialogue as a part of Reed's prison sentence.[5]  We agree.

When an illegality is severable from the balance of a defendant's sentence, we may vacate the challenged portion of the sentence without disturbing the rest. *See Bonilla v. State*, 791 N.W.2d 697, 702 (Iowa 2010); *State v. Maghee*, 573

---

[5] Both parties suggest that it is within the sentencing court's authority to order a victim-offender dialogue as a condition of probation.  *See* Iowa Code § 907.6; *State v. Thacker*, 862 N.W.2d 402, 404 (Iowa 2015) (noting a defendant's probationary sentence required, among other conditions, her participation in a victim-offender reconciliation program).  We do not address that issue here.

N.W.2d 1, 7 (Iowa 1997).  We therefore vacate the victim-offender dialogue portion of Reed's sentence and remand for entry of a corrected sentencing order.

**CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**