STATE of Missouri,
Plaintiff/Respondent,

v.

Wayne GILLESPIE,
Defendant/Appellant.

No. ED 98985.

Missouri Court of Appeals,
Eastern District,
Division One.

June 18, 2013.

Shaun J. Mackelprang, Jefferson City, MO, for Plaintiff/Respondent.

Amanda Page Faerber, St. Louis, MO, for Defendant/Appellant.

SHERRI B. SULLIVAN, Judge.

### Introduction

Wayne Gillespie (Appellant) appeals from the trial court's judgment and sentence entered upon a jury verdict finding him guilty of kidnapping and first-degree robbery and sentencing him as a prior and persistent offender to two concurrent terms of thirty years' imprisonment. We affirm.

### Factual and Procedural Background

Appellant does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the evidence presented at trial is as follows. On December 21, 2011, Zia Choudhury (Choudhury) left Llewellyn's, a bar where he had been drinking with friends, to walk his sister home. As the two walked northbound on the east side of Kingshighway, they encountered Appellant, who asked them for money. Choudhury said no, and then Appellant asked them if they wanted to buy

some marijuana. After declining this offer, Choudhury and his sister continued walking. After leaving his sister at her house, Choudhury began walking back to Llewellyn's to rejoin his friends. On the way back, now walking southbound on the west side of Kingshighway, Choudhury again encountered Appellant who again offered to sell Choudhury drugs. Choudhury again declined. Appellant walked along with Choudhury and told him his name was Wayne.

They crossed Delmar Boulevard and Choudhury noticed another man walking 20 or 30 feet behind them. Appellant's demeanor changed at this point from friendly to threatening, aggressively pressuring Choudhury for money. Choudhury decided to give Appellant a few dollars and reached into his pocket to get his wallet. Appellant grabbed him from behind, put him in a "full Nelson" headlock,[1] and forced him up some steps under a church archway. Appellant continued to hold Choudhury this way while the man that had been walking behind them approached and started going through Choudhury's pockets, taking everything out, including his wallet, keys and phone. The man went to the ATM at a nearby gas station with Choudhury's debit card and withdrew money. Appellant continued to hold Choudhury in a headlock the entire time the man was gone. When the man returned, he and Appellant divided the money between themselves and left, telling Choudhury to stay put or Appellant would kill him. Choudhury waited until he could not see them anymore, and then ran until he found a woman whose phone he asked to use to call 911.

---

1. A "full Nelson" headlock is performed by the attacker putting both his arms under the victim's arms, from behind, and then the attacker clasping his hands behind the victim's head.

Officer Stephen Perry (Officer Perry) responded, interviewed Choudhury about the incident and made a report. Detective Douglas McPherson (Detective McPherson) investigated the incident. The name "Wayne," the location of the incident, and the age and physical description given by Choudhury led Detective McPherson to suspect Appellant as the perpetrator. Choudhury identified Appellant in a photographic and physical line-up as the man who kidnapped and robbed him. Police discovered the identity of Appellant's co-conspirator, James Scott (Scott), via ATM surveillance video. Choudhury identified Scott as the second perpetrator from a photographic line-up.

Appellant was charged with one count of kidnapping, one count of first-degree robbery and two counts of armed criminal action (ACA). At trial, Choudhury testified he identified both Appellant and Scott as the two people who robbed him and held him at the church. Detective McPherson testified that after he arrested Appellant, he found Choudhury's Washington University student bus pass in his pocket. Officer Perry testified he did not get the impression that Choudhury was under the influence of crack cocaine when he interviewed him; he was calm and spoke coherently.

The jury found Appellant guilty of kidnapping and first-degree robbery, but acquitted him of the two ACA counts. The court sentenced Appellant to two concurrent thirty-year terms.

### Points on Appeal

In his first point, Appellant claims the trial court erred by admitting Officer Perry's rebuttal testimony because it was outside of the scope of rebuttal in that the State injected the issue of Choudhury's sobriety into trial, not Appellant.

In his second point, Appellant asserts the trial court erred by admitting evidence that he neglected to tell police Scott was not the second man because such evidence improperly commented on Appellant's post-arrest silence.

### Standard of Review

The trial judge determines the scope of rebuttal testimony, subject to review for abuse of discretion. *State v. Floyd,* 347 S.W.3d 115, 122 (Mo.App. E.D.2011). A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence. *Id.* This Court will not hamper the exercise of that discretion unless it is clear that the trial court's ruling is against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Id.* Mere error is insufficient to support a reversal; this Court will affirm the trial court's judgment unless the appellant shows that the error was so prejudicial as to deprive him of a fair trial. *Id.* The test for prejudice where a criminal appellant claims improper admission of evidence is whether the improper admission was outcome-determinative. *Id.*

A specific objection must be made when evidence is offered at trial in order to preserve the issue for appellate review. *State v. Cook,* 273 S.W.3d 562, 568 (Mo. App. E.D.2008). A failure to object to the admission of evidence at the earliest opportunity constitutes a waiver of the claim. *Id.* We review an unpreserved error for plain error only. Rule 30.20.[2] This Court only grants relief under the plain error standard when an alleged error so substantially affects a defendant's rights that

---

**2.** All rule references are to Mo. R.Crim. P.2012, unless otherwise indicated.

a manifest injustice or a miscarriage of justice results if left uncorrected. *State v. Steger*, 209 S.W.3d 11, 16 (Mo.App. E.D. 2006). Plain error is one that is evident, obvious, and clear. *Id.* at 16–17. A defendant assumes the burden of proof to demonstrate plain error. *Id.* at 17.

### Discussion

### Point I

■ Appellant asserts Officer Perry's testimony that Choudhury did not appear to be under the influence of crack cocaine when he interviewed him after the crime was outside the scope of permitted rebuttal testimony in that Appellant did not inject the issue of Choudhury's sobriety into trial. We disagree.

Appellant testified in his own defense at trial, maintaining that Choudhury bought marijuana from him on the night in question and smoked some with him. Also, Appellant testified that he, Choudhury, and a man named "Charles" smoked a marijuana joint laced with cocaine made by "Charles." Appellant claimed Choudhury then stiffed him on payment for the marijuana, and said Charles also declared Choudhury owed him money for the cocaine he had contributed to the joint. Appellant testified that when Choudhury tried to walk away from them without paying, he grabbed him and Charles grabbed his wallet. Appellant testified that Choudhury gave Charles his pin number, and Charles asked Choudhury to go with him to the ATM, but Choudhury said he was too high to walk there.

The State presented Officer Perry's testimony in response to Appellant's version of events. Officer Perry testified he had experience with people under the influence of crack cocaine; he did not get the impression that Choudhury was under the influence of crack cocaine when he interviewed him after the incident, and Choudhury was calm and spoke coherently.

■ Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence. *Floyd*, 347 S.W.3d at 122. If the defendant raises an issue directly or by implication, the prosecutor can present otherwise inadmissible testimony to counteract the negative inference the defense has injected into the case. *Id.* Furthermore, rebuttal testimony is not necessarily inadmissible simply because it is cumulative of the State's evidence-in-chief or because it would have been better procedure to offer it as part of the State's evidence-in-chief instead of rebuttal. *Id.*

Here, in its case-in-chief, the State elicited testimony from Choudhury that he had some drinks while he was at Llewellyn's that night, but was not intoxicated. However, when testifying in his defense, Appellant claims Choudhury bought marijuana from him; smoked marijuana laced with crack cocaine; and said he was "too high" to go to the ATM. Accordingly, Officer Perry's testimony was properly introduced to disprove or counteract Appellant's testimony. Point I is denied.

### Point II

■ Appellant also asserts that his omission in telling police Scott was the second man should have been excluded from evidence because the admission of such evidence improperly commented on Appellant's post-arrest silence. We disagree.

■ Appellant did not object to this evidence at trial so we review this point for plain error only. Rule 30.20. The State is prohibited from using an accused's silence, at the time of arrest and after receiving

*Miranda*[3] warnings, for impeachment purposes. *State v. Prince,* 311 S.W.3d 327, 338 (Mo.App. W.D.2010); *State v. Barton,* 240 S.W.3d 693, 703 (Mo. banc 2007); *Doyle v. Ohio,* 426 U.S. 610, 618–19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (reference to a defendant's silence, request for an attorney, or refusal to answer questions after the defendant has been arrested and given his *Miranda* warnings is a violation of due process because said warnings carry an implicit assurance that silence will carry no penalty).

■ However, this rule against the admissibility of a defendant's post-arrest, post-*Miranda* silence does not apply if the defendant chooses not to exercise his or her right to remain silent and elects, instead, to make a statement while in custody. *Prince,* 311 S.W.3d at 338. A defendant who voluntarily speaks after receiving *Miranda* warnings may be impeached not only with his own statements but also with his selective silence. *State v. Hutchison,* 957 S.W.2d 757, 763 (Mo. banc 1997).

In the instant case, Appellant chose to speak after being read his *Miranda* rights. After his arrest and *Miranda* warning, Appellant told Detective McPherson his version of what happened the night of December 21, 2011. He also stated to Detective McPherson that he had no idea who the second man was but was just someone he "had seen around." Then, at trial, while testifying, Appellant repeatedly stated that the second man was a man named Charles. He denied that Scott was the second man. The prosecutor cross-examined Appellant as to why he failed to tell Detective McPherson he knew the second man was named Charles instead of telling him he did not know who the man was. In asking Appellant this question, the prosecutor pointed out the discrepancies between Appellant's recounted version of events to Detective McPherson, i.e., that he did not know who the second man was, and his version told at trial, that the second man's name was "Charles." Since Appellant waived his right to remain silent and chose to give a detailed statement to Detective McPherson upon interrogation, and then testified inconsistently with part of that statement at trial, the State was allowed to explore any omissions in that statement in light of Appellant's trial testimony. *Hutchison,* 957 S.W.2d at 763. *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). Appellant's post-arrest, post-*Miranda* declaration that he did not know the second man but had just seen him around was inconsistent with his repeated familiar references to the man as "Charles" at trial. Therefore, the prosecutor was allowed to ask Appellant about this inconsistency and there was no error, plain or otherwise, in the trial court's failure to *sua sponte* exclude this admissible evidence. Based on the foregoing, Point II is denied.

### Conclusion

The trial court's judgment and sentence are affirmed.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.

---

**3.** *Miranda v.Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).