STATE of Missouri, Respondent,

v.

**Richard WATSON, Appellant.**

No. ED 104744

Missouri Court of Appeals,
Eastern District,
DIVISION FIVE.

Filed: July 18, 2017

FOR APPELLANT: Amy E. Lowe, 1010 Market Street, Suite 1100, St. Louis, Missouri 63101.

FOR RESPONDENT: Mary H. Moore, Assistant Attorney General, PO Box 899, Jefferson City, Missouri 65102.

Philip M. Hess, Presiding Judge

## Introduction

Richard Watson ("Appellant") was convicted, following a jury trial, of one count of involuntary manslaughter, in violation of Section 565.024[1] and one count of armed criminal action, in violation of Section 571.015. Appellant was sentenced as a persistent offender to four years of incarceration for involuntary manslaughter, and three years of incarceration for armed criminal action with the sentences to be served concurrently. In his sole point relied on, Appellant argues that the trial court abused its discretion in allowing a correctional supervisor to testify as a rebuttal witness, and that he was prejudiced by the trial court's abuse of discretion. We affirm.

## Factual Background

Appellant does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the evidence at trial is as follows. *State v. Twitty*, 506 S.W.3d 345, 346 (Mo. banc 2017).

Appellant lived with his thirteen-year-old son, D.W. in St. Louis. In February 2014, Appellant's home was burglarized. Following the burglary, Appellant testified he learned that two of his neighbors, brothers Ezell Caves and Demetrius Griffin, were likely the burglars. Appellant also testified that, following the burglary of his home, Mr. Caves and Mr. Griffin threatened him and D.W. with violence. Mr. Caves denied burglarizing Appellant's home and threatening Appellant and D.W. with violence.

On May 4, 2014, Appellant drove his truck to a liquor store with his girlfriend around 6:30 p.m. and purchased a bottle of vodka. Appellant was carrying a handgun. Upon returning home, Appellant drank some of the vodka and shared it with his friends who had gathered at his home. Appellant briefly returned to his truck with his girlfriend, and when the two exited the truck they saw Mr. Caves and Mr. Griffin walking on a nearby sidewalk with a group of people. Appellant stopped to let

---

1. All subsequent statutory citations are to RSMo 2000, as amended, unless otherwise indicated.

the group walk by. Mr. Caves stopped in front of Appellant's truck and the two men argued about who would walk first on the sidewalk. Upon witnessing the argument between Mr. Caves and Appellant, Mr. Griffin said, "I told you not to be saying nothing to my brother," and asked if Appellant wanted to fight. Appellant agreed to fight Mr. Griffin, and both men stepped into the street.

Appellant testified that as Mr. Caves walked away with his back turned, Mr. Caves said "Don't make this a murder scene,"[2] and reached his hand into his backpack. Appellant testified that because he thought Mr. Caves was reaching for a gun, he pulled out his own gun and shot Mr. Caves two times. The first shot hit Mr. Caves' left foot and he fell to the ground. As Mr. Caves tried to get up, Appellant fired a second shot, hitting the bottom of his right leg. Appellant then testified that he saw Mr. Griffin reach into his waistband and run towards him. Appellant testified that because he believed Mr. Griffin was reaching for a gun, he shot Mr. Griffin multiple times, causing him to fall to the ground. After falling to the ground, Appellant shot Mr. Griffin several more times. Mr. Griffin died from his wounds. Mr. Caves denied ever trying to pull a gun from his backpack, and testified that Appellant shot him and Mr. Griffin for no reason. Officer Burgoon, St. Louis police officer, testified that no guns were found in Mr. Caves' backpack, and Mr. Caves testified that neither he nor Mr. Griffin had a gun on the night of the shooting.

The State of Missouri ("State") charged Appellant with four counts arising from the May 4 shooting: Count I, for first-degree murder[3]; Count II, for armed criminal action; Count III, for first-degree assault; and Count IV, for armed criminal action.

Two of Appellant's neighbors testified that they saw Appellant firing multiple gunshots while standing over Mr. Griffin. Roger Murphy, a St. Louis City police detective, testified that he conducted a videotaped interview[4] with Appellant. Detective Murphy testified that during the interview Appellant stated the shooting would have been justified had he not gone back over and shot Mr. Griffin again, and that he "should have left it alone."

Appellant presented evidence regarding the character and reputation of Mr. Caves and Mr. Griffin to bolster his argument for self-defense. Appellant testified that Mr. Caves and Mr. Griffin threatened him with violence on multiple occasions. Appellant testified that Mr. Caves and Mr. Griffin had a reputation for carrying guns. On cross-examination, Appellant admitted that he had been involved in prior acts of violence, including a fist fight and an assault with a gun.

Marvin King, Appellant's neighbor, testified that Mr. Caves and Mr. Griffin had a reputation in the community for trouble, and that he witnessed Mr. Caves and Mr. Griffin make multiple threats of violence toward Appellant. William Harvey, Appellant's neighbor, testified that Mr. Caves and Mr. Griffin had a reputation in the community for breaking into people's houses. D.W. testified that Mr. Caves and Mr. Griffin threatened him and Appellant with violence on multiple occasions.

---

**2.** However, on cross-examination Appellant admitted that he told Detective Murphy that Mr. Caves had said "Don't make this a scene."

**3.** This charge included the following lesser included offenses: murder in the second degree; voluntary manslaughter; and involuntary manslaughter.

**4.** The recording was played to the jury.

In rebuttal, over Appellant's objection, the State called Captain Sonya White, a shift supervisor at the Justice Center correctional facility. Captain White testified that, while Appellant was incarcerated and on lockdown in October 2014, she opened the door to Appellant's unit to serve dinner. After handing Appellant his Styrofoam dinner tray, Captain White testified that Appellant asked her when his unit would be coming off lockdown. Captain White testified that as she told Appellant she would find out for him, he "snapped," and threw the Styrofoam dinner tray at her. The tray hit her, but it did not cause serious injury.

The case was submitted to the jury with self-defense instructions. The jury returned guilty verdicts on Count I, for involuntary manslaughter, and Count II, for armed criminal action; the trial court entered its judgment accordingly. Appellant's sole point on appeal is that the trial court abused its discretion in allowing Captain White to testify as a rebuttal witness. He argues that Captain White's testimony was not proper rebuttal evidence because it was irrelevant and showed Appellant as incarcerated for no compelling reason. Appellant claims he was prejudiced by the court's abuse of discretion and his convictions should be reversed and his case remanded for a new trial.

## Standard of Review

The trial judge's determination of the scope of rebuttal testimony is subject to review for abuse of discretion. *State v. Gillespie*, 401 S.W.3d 560, 563 (Mo. App. E.D. 2013) (quoting *State v. Floyd*, 347 S.W.3d 115, 122 (Mo. App. E.D. 2011)). "A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence." *State v. Hurley*, 208 S.W.3d 291, 293 (Mo. App. S.D. 2006). An abuse of discretion exists where a ruling is clearly against the logic of the circumstances and is so unreasonable and arbi-

trary that it shocks the sense of justice and indicates a lack of careful consideration. *State v. Smith*, 996 S.W.2d 518, 521 (Mo. App. W.D. 1999).

Mere error is insufficient to support a reversal. *State v. Martin*, 211 S.W.3d 648, 653 (Mo. App. W.D. 2007). An appellant must show there is a reasonable probability the error was so prejudicial as to deprive him of a fair trial. *Id.* Where an appellant claims improper admission of evidence, the test for prejudice is whether the improper admission was outcome-determinative. *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001). An improper admission is outcome-determinative when there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence when considered with and balanced against all evidence properly admitted. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). Outcome-determinative prejudice is distinguished from evidence-specific prejudice, which exists where a trial court improperly weighs the probative value of a piece of evidence against its potential for prejudice. *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997). If evidence-specific prejudice is found, no reversal is required. *Id.*

## Discussion

Appellant argues the trial court abused its discretion in allowing Captain White to testify about the incident where Appellant threw his Styrofoam dinner tray at her. Appellant maintains that her testimony was improper rebuttal evidence because it was not relevant to demonstrate Appellant's violent character, and it introduced highly prejudicial evidence he had been in jail, on lockdown, pending trial. Appellant argues, but for the admission of Captain White's rebuttal testimony into evidence, there is a reasonable probability

he would not have been found guilty of his charged crimes.

The State argues the trial court did not abuse its discretion in allowing Captain White's challenged testimony, because the testimony properly rebutted the inferences raised by Appellant during his case that Mr. Caves and Mr. Griffin were "trouble" and that Appellant was the victim of their threats. The State contends that Captain White's testimony about Appellant's unprovoked angry outburst toward her rebutted Appellant's representation he shot Mr. Caves and Mr. Griffin because they provoked him. The State further argues that even if Captain White's testimony was improperly admitted, Appellant has not shown that he suffered any prejudice.

We agree with the State. The trial court did not abuse its discretion when it allowed Captain White to testify as a rebuttal witness. Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal. *State v. Gillespie*, 401 S.W.3d 560, 563 (Mo. App. E.D. 2013) (quoting *State v. Floyd*, 347 S.W.3d 115, 122 (Mo. App. E.D. 2011)). The prosecutor can present otherwise inadmissible testimony to counteract any negative inference the defense has directly or impliedly injected into the case. *Id.* "[A] defendant cannot complain about the state's inquiring about matters first brought into the case by the defendant." *State v. Schlup*, 785 S.W.2d 796, 801 (Mo. App. W.D. 1990) (citing *State v. Jordan*, 646 S.W.2d 747, 750 (Mo. banc 1983)). When the defendant raises the victim's reputation as a violent and turbulent man, he also raises his own. *State v. Gilpin*, 954 S.W.2d 570, 576 (Mo. App. W.D. 1997) (citing *State v. Hill*, 614 S.W.2d 744, 752 (Mo. App. S.D. 1981)).

*State v. Oates*, 12 S.W.3d 307 (Mo. banc 2000) is analogous to the present case. In *Oates*, the appellant argued the trial court erred when it allowed the State to cross-examine him regarding his commission of prior acts of violence. *Id.* at 312. To support his theory of self-defense, the appellant was asked whether he had ever seen the victim commit an act of violence during his direct-examination. *Id.* In response, the appellant described an instance involving the victim attacking a fellow co-worker, creating an inference that the victim was the first aggressor. *Id.* The Missouri Supreme Court held that because the appellant had intentionally injected the victim's violent nature into the case, his own violent nature was subject to inquiry by the State. *Id.* at 313. The Court reasoned that the State's cross-examination was proper because it challenged the credibility of the appellant's self-defense claim. *Id.*

Similar to *Oates*, Appellant directly introduced evidence that created negative inferences that Mr. Caves and Mr. Griffin had violent characters and were the first aggressors to support his theory of self-defense. Specifically, Mr. King and Mr. Harvey testified on direct-examination that Mr. Caves and Mr. Griffin had a reputation for causing trouble in the community and breaking into people's houses. Appellant, D.W., and Mr. King testified on direct-examination that they witnessed Mr. Caves and Mr. Griffin threaten Appellant with violence on multiple occasions. Appellant, by intentionally injecting the victim's violent character into the case, opened himself up for inquiry into his own character. Captain White's testimony was proper because it challenges the credibility of Appellant's self-defense claim by making an inference that Appellant was the first aggressor. *See id.*

Appellant argues Captain White's challenged testimony improperly prejudiced him because it described a prior bad act that demonstrated he was incarcerated and on lockdown for no compelling reason. This argument is without merit. Even if

allowing Captain White's challenged testimony was an abuse of discretion, the testimony was not so prejudicial as to deprive Appellant of a fair trial because the testimony was not outcome-determinative.

In *Roberts*, the appellant was convicted of first degree murder and sentenced to death for beating his fifty-six year old female neighbor to death with a hammer. 948 S.W.2d at 585. The appellant argued that his sentence and conviction should be reversed because the trial court erred in improperly admitting evidence of his prior uncharged misconduct, namely that he drove at excessive speed, stole license plates from cars at a mall, and burglarized a car dealership. *Id.* at 590. The Missouri Supreme Court agreed that the trial court improperly admitted evidence of prior uncharged crimes by the defendant. *Id.* at 590–92. The Court found, however, that the defendant's conviction and sentence should be upheld because the trial court's improper admission of the uncharged crimes evidence resulted in evidence-specific prejudice, not outcome-determinative prejudice. *Id.* at 592. In concluding that no outcome-determinative prejudice resulted, the Court noted that the evidence of the appellant's guilt was "uncontroverted and overwhelming." *Id.* The Court also noted that "[t]here [wa]s virtually no danger that the jury would have found [the appellant] guilty of murder to which he confessed because he drove too fast, stole license plates and committed a minor burglary." *Id.*

Like *Roberts*, even if allowing Captain White's challenged testimony was an abuse of discretion, Appellant's conviction and sentence should be upheld because no outcome-determinative prejudice resulted. There is no danger that the jury would have found Appellant guilty of involuntary manslaughter and armed criminal action because he threw his Styrofoam dinner tray at Captain White while incarcerated and on lockdown.

Like *Roberts*, the evidence that Appellant shot and killed Mr. Griffin is uncontested. Appellant admitted that he shot and killed Mr. Griffin and injured Mr. Caves, and there is substantial evidence in the record to support that Appellant was not acting in self-defense. Mr. Caves testified that Appellant shot Mr. Griffin multiple times while he was on the ground, and that neither he nor Mr. Griffin was armed with guns on the night of the shooting. Officer Burgoon testified that no weapons were retrieved from Mr. Caves' backpack. Appellant's neighbors testified that they saw Appellant firing multiple gunshots while standing over Mr. Griffin. Detective Murphy testified that during his interview with Appellant, Appellant stated that the shooting would have been justified had he not gone back over and shot Mr. Griffin again, and that he "should have left it alone." When balanced against all evidence properly admitted, there is no a reasonable probability that the jury would have acquitted Appellant but for Captain White's challenged testimony.

The trial court did not abuse its discretion when it allowed Captain White to testify as a rebuttal witness. The testimony did not prejudice defendant's substantial rights or alter the outcome of the trial. Appellant's point is denied. The judgment of the trial court is affirmed.

Lawrence E. Mooney, J. and Roy L. Richter, J. concur.