

# In the Missouri Court of Appeals
# Eastern District

<u>**DIVISION ONE**</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112122 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR01744-01 |
| | ) | |
| DEANDRE J. COTHRAN, | ) | Honorable Nancy W. McLaughlin |
| | ) | |
| Appellant. | ) | Filed: May 27, 2025 |

**Introduction**

Deandre Cothran ("Defendant") appeals from the judgment upon his conviction following a jury trial for one count of unlawful use of a weapon, one count of armed criminal action, and one count of unlawful possession of a firearm. On appeal, Defendant argues the trial court erred in allowing him to proceed to trial *pro se*, finding Defendant competent to proceed to trial without holding a competency hearing, failing to order a mental evaluation to determine Defendant's competence after trial, failing to grant Defendant's motion to dismiss for violation of his speedy trial rights, and failing to *sua sponte* declare a mistrial after a witness commented on Defendant's post-arrest silence. We affirm the judgment of the trial court.

**Factual and Procedural History**

<u>Facts</u>

1

On April 24, 2020, Ashley Friend was driving north on Interstate 270 in St. Louis County. Just before midnight, Friend saw one other car on the highway, a white Volkswagen. The Volkswagen pulled up next to Friend's car, and she heard loud popping sounds. Friend's passenger window shattered and she felt something hit her arm, later determined to be a bullet. Friend ducked under her steering wheel and stopped in the middle of the highway. The Volkswagen continued north on Interstate 270.

Friend pulled over to the side of the road, called 911, and gave the dispatcher a vehicle description and a partial license plate number. Officer Daniel Herich responded to the call and searched for the suspect vehicle. At a nearby parking lot, Officer Herich saw a white Volkswagen matching the description of the vehicle. Officer Herich approached the Volkswagen and talked to Defendant. Defendant produced a work badge bearing the name "Houston Mohammed." Eventually, Officer Herich obtained Defendant's wallet and learned his real name. At one point, Defendant spontaneously stated he had not "been in town long enough to make enemies to get into a shootout with." Later that evening, police arrested Defendant.

Police found two spent cartridge cases in Defendant's vehicle on the floor between the driver's door and seat. Later investigation revealed a discarded firearm near the crime scene at an exit off Interstate 270. Forensic testing revealed the presence of Defendant's DNA on the firearm, and test-firing of the firearm was consistent with the spent cartridge cases found in Defendant's vehicle. Gunshot residue also was found on Defendant's hand.

<u>Procedural History</u>

The State charged Defendant, via indictment, with unlawful use of a weapon, armed criminal action, and unlawful possession of a firearm.

*Waiver of Counsel*

Defense counsel entered her appearance in May 2020. In June 2020, counsel filed a motion to withdraw because Defendant wished to proceed *pro se*. Appellant appeared *pro se* at a pre-trial hearing on December 15, 2022. During the hearing, the trial court asked Defendant if he still wished to represent himself at trial. Defendant stated "that's not correct" and objected to the court's jurisdiction.[1] The trial court then informed Defendant of the charges he faced and the sentencing ranges. The trial court advised Defendant he had the right to an attorney, and if he could not employ one, the court would appoint one for him. When the trial court asked Defendant if he understood, Defendant stated he objected to "everything." The trial court further advised Defendant of his right to trial by jury, the assistance of counsel, the right to cross-examination, and the right to remain silent. The trial court also advised Defendant that, if he was found guilty, the court likely would impose a prison sentence. Finally, the trial court advised Defendant of his right to appeal the trial court's judgment. When asked if he understood these rights, Defendant stated he understood his rights to "consular jurisdiction."

The trial court presented Defendant with a waiver of counsel form and asked Defendant to read the form. Defendant stated he was "all right." When the trial court asked if he was refusing to read the form, Defendant responded that he was done talking. The trial court took Defendant's statement as a "refusal to read the waiver of counsel form" and asked Defendant if he refused to sign the form. Defendant asked if he could go back to his seat. The trial court informed Defendant that it would take this as his refusal to waive his right to counsel in writing. The trial court concluded, "the Court cannot do anything more than it has done to make sure that

---

[1] Throughout the pre-trial and trial proceedings Defendant claimed he was a "Moorish American inhabitant at the Missouri state republic" and espoused sovereign citizen beliefs. Sovereign citizens claim "an individual can withdraw his consent to be governed, thus removing himself from the jurisdiction of courts and police." *State v. Davis*, 580 S.W.3d 26, 30 (Mo. App. E.D. 2019).

you are aware that you do have those rights." The trial court set the next pre-trial conference on January 5, 2023.

After the January 5 hearing, the trial court filed a memorandum stating that Defendant was again examined about whether he understood his right to be represented by counsel. The trial court found that Defendant comprehended that: (1) if Defendant was unable to afford an attorney, the court would appoint an attorney to represent him; (2) he had the right to trial with the assistance of an attorney who would confront and cross-examine witnesses; (3) he had the right to remain silent and not make any statement which may be used in the prosecution of the criminal charges filed against him; (4) if he entered a guilty plea or was found guilty, the judge was most likely to impose a jail or prison sentence; and (5) he had the right to appeal the court's decision or the jury's verdict if he exercised his right to go to trial and was found guilty.

The trial court also found that Defendant "declined to sign a waiver of counsel form" and "Defendant understands his right to counsel and is declining counsel by his actions and waiving counsel in this matter." Finally, the trial court found that "Defendant is apparently very intelligent and capable of speaking articulately and he knowingly, intelligently and voluntarily waived his right to counsel in this matter."

*Mental Competency Evaluation*

On October 8, 2021, the trial court ordered a mental evaluation of Defendant. In response to this order, Defendant filed a "motion to choose doctor," in which he stated he would participate in the mental evaluation on the conditions that he got to choose his own doctor to cross-examine the findings of the court's doctor and the court paid all expenses for Defendant's doctor of choice. During the evaluation, Defendant chose not to fully participate based on his sovereign citizen beliefs, though he admitted such beliefs "were just a stall tactic."

4

On March 18, 2022, the Department of Mental Health issued its report finding that Defendant was competent to proceed to trial. The trial court likewise found Defendant competent to proceed to trial. Defendant did not challenge the competency evaluation.

In his motion for new trial, filed with the assistance of counsel, Defendant requested a second competency evaluation before sentencing. Defendant attached an affidavit from his mother stating he suffered traumatic brain injury from being hit in the head with a large piece of concrete when he was a child. The trial court denied the motion.

*Speedy Trial Request*

On January 4, 2021, Defendant filed a "demand for dismissal," in which he asserted his right to a speedy trial. Defendant's case had been pending during the COVID-19 pandemic. During 2020, the case generally was continued due to the pandemic. In 2021, Defendant failed to appear on one occasion, requiring the case to be continued for two months. For a period of time near the end of 2021, the trial court continued the case without a specified reason. The trial court ordered Defendant's mental evaluation on October 8, 2021, and the Department of Mental Health submitted its report on March 18, 2022.

Following the submission of the mental evaluation, the case proceeded with a set trial date of January 9, 2023. The trial court continued the case for two weeks in January 2023 due to an unavailable State's witness. Then, at the pre-trial conference on January 13, 2023, Defendant asked for and received a six-month continuance for the express purpose of retaining counsel. Ultimately, the case was tried to a jury on July 24, 2023.

*Alleged* Doyle *Violations at Trial*

During the direct examination of one of the investigating detectives, Detective James Crupper, the State elicited that Defendant was advised of his *Miranda* rights. While Detective

Crupper was explaining to Defendant why he was there, what he was accused of, and the evidence against him, Defendant claimed he did not understand the charges against him. Detective Crupper testified that Defendant "never denied being involved, but he never gave an excuse or anything."

On cross-examination of Detective Crupper, Defendant asked whether he found an in-car camera while searching Defendant's vehicle. Detective Crupper did not recall. Defendant continued this line of questioning: "A cab camera wouldn't be considered [of] evidentiary value to you from a vehicle involved in a shooting?" Detective Crupper replied, "Sure, if I knew that there was something on there of evidentiary value, but nobody alerted me to that."

Defendant also testified at trial. During his direct-examination, Defendant testified he kept a camera in his car. In its cross-examination of Defendant, the State asked if Defendant had mentioned the camera to anyone, including law enforcement, before trial. Defendant responded that he had not mentioned the camera to law enforcement. In closing argument Defendant again referred to the camera in the car and questioned the integrity of Detective Crupper's investigation.

The jury found Defendant guilty as charged, and the trial court entered judgment. Defendant now appeals.

## Discussion

### Point I

In his first point, Defendant argues the trial court erred in allowing him to proceed *pro se* at trial because he did not knowingly and intelligently waive his right to counsel.

#### *Standard of Review*

"Appellate review of the factors constituting a valid waiver of the right to counsel is *de novo*." *State v. Murray*, 469 S.W.3d 921, 926 (Mo. App. E.D. 2015).

6

"The Sixth Amendment affords the right to those accused in all criminal prosecutions to have the assistance of counsel for their defense." *State v. Teter*, 665 S.W.3d 306, 313 (Mo. banc 2023). "At the same time, the Sixth Amendment grants the accused the right to make his own defense." *Id.* This includes the right to self-representation. *Id.*

"There are four requirements for a defendant seeking to waive his right to counsel and proceed *pro se*. A defendant's invocation of the right must be made unequivocally and in a timely manner, and the corresponding waiver of counsel must be knowing and intelligent." *Id.* (quoting *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007)). "A thorough evidentiary hearing must support the trial court's ruling upon a defendant's timely and unequivocal request to proceed *pro se*." *Id.* (quoting *Black*, 223 S.W.3d at 155). "The test for determining if the waiver is made intelligently and knowingly depends on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* (quoting *State v. Hunter*, 840 S.W.2d 850, 858 (Mo. banc 1992)).

No particular litany of questions is required, but the Missouri Supreme Court has listed several subjects a trial court should explore on the record to ensure a defendant's waiver is voluntary, knowing, and intelligent:

> A trial court should inquire into the defendant's capacity to make an intelligent decision and his knowledge of his own situation. ... The court should ensure that the defendant is not acting under duress, does not suffer from a mental incapacity, is literate and is minimally familiar with the trial process, including possible defenses to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged.
> ....
> The court should also make certain that the defendant understands the possible penalties if convicted. Trial courts should also be sure that the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights. . . .The court should first ensure that

7

the defendant understands that he has the right to counsel, including appointed counsel if he is indigent. If the defendant chooses to continue, the court should advise him generally that it is usually a mistake to proceed without a lawyer and then specifically warn him about the dangers and repercussions of that decision.

*Id.* (quoting *Black*, 223 S.W.3d at 156). The State bears the burden to prove that an unrepresented defendant waived the right to counsel. *Id.* The State must demonstrate compliance with the written waiver requirement in Section 600.051 and that the defendant was afforded a *Faretta* hearing.[2] *Id.* "Only then will the burden shift to the unrepresented defendant to establish that the waiver of counsel was not knowing, voluntary, or intelligent." *Id.* (quoting *State v. Kunonga*, 490 S.W.3d 746, 765 (Mo. App. W.D. 2016)).

A defendant can impliedly waive the right to counsel. *State v. Ndon*, 583 S.W.3d 145, 156 (Mo. App. W.D. 2019). When a defendant is presented with a waiver of counsel form and refuses to sign it, and continually refuses to retain counsel, the defendant impliedly waives his right to counsel through his conduct, rendering the requirement in Section 600.051 of a written waiver of counsel inapplicable. *Id*; *see also State v. Davis*, 507 S.W.3d 41, 45-46 (Mo. App. E.D. 2016).

Here, the State has met its burden to show that Defendant waived his right to counsel and that the written waiver requirement in Section 600.051 does not apply. First, the trial court held a *Faretta* hearing. *See Teter*, 665 S.W.3d at 313. Additionally, the trial court presented Defendant with a waiver form, but Defendant refused to read or sign it, and he made no further effort to retain counsel. *See Ndon*, 583 S.W.3d at 156; *Davis*, 507 S.W.3d at 45-46. Accordingly, the burden shifts to Defendant to show that the waiver was not knowing, voluntary, or intelligent. *Teter*, 665 S.W.3d at 313 (quoting *Kunonga*, 490 S.W.3d at 765).

---

[2] *Faretta v. California*, 422 U.S. 806 (1975).

Defendant argues the waiver was insufficient because, during his *Faretta* hearing, Defendant was not "informed of the dangers of self-representation nor the fact that he would be treated no differently than an attorney if he elected to represent himself." Defendant further argues the *Faretta* hearing was inadequate because "there was no record made regarding appellant's understanding of the elements of the charges, defenses, and lesser included offenses." Finally, Defendant argues "the trial court also failed to take into account that appellant repeatedly informed the court, both verbally and in writing, that he was under duress."

We find Defendant's *Faretta* hearing sufficient and conclude he knowingly, voluntarily, and intelligently waived the right to counsel. On two different occasions, the trial court discussed the waiver of counsel with Defendant. During the first hearing on December 15, 2022, the trial court informed Defendant of the charges he faced and the sentencing ranges for those offenses. The trial court then specifically advised Defendant he had the right to an attorney, and if he could not employ one, the court would appoint one for him. The trial court also advised Defendant of his right to trial by jury, the assistance of counsel, the right to cross-examination, and the right to remain silent. The trial court also advised Defendant that, if he was found guilty, the court was likely to impose a prison sentence. Lastly, the trial court advised Defendant of his right to appeal the trial court's judgment.

At the second hearing on January 5, 2023, the trial court again inquired whether Defendant understood his right to be represented by counsel. The trial court issued a memorandum finding that Defendant comprehended all of the rights of which he was advised at the December 15, 2022, pre-trial hearing. The trial court also found that Defendant "declined to sign a waiver of counsel form" and "understands his right to counsel and is declining counsel by his actions and waiving counsel in this matter." The trial court further found Defendant "is

9

apparently very intelligent and capable of speaking articulately and he knowingly, intelligently and voluntarily waived his right to counsel in this matter."

The trial court thus fully informed Defendant of the rights he would be giving up should he proceed *pro se*. The trial court also informed Defendant of the penalties he could face if convicted. The trial court did not need to inquire further into Defendant's mental state because it recently had found Defendant competent to stand trial.

Defendant nonetheless maintains he was not informed of the dangers of self-representation and there was no record of Defendant's understanding of the elements of the charges, defenses, and lesser included offenses available to him. His arguments are unavailing because, as the Southern District of this Court previously has held, "such omissions are not sufficient to demonstrate inadequate waiver." *State v. Lavender*, 680 S.W.3d 119, 133 (Mo. App. S.D. 2023). Also, when "there is a question about whether the circuit court adequately cautioned of the perils of self-representation, a defendant's 'past contacts with the criminal justice system and his performance at the proceedings at which he represented himself' are considered." *Teter*, 665 S.W.3d at 315 (quoting *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000)).

Defendant has had ample prior contacts with the criminal justice system. In 2010, he was convicted at trial of robbery in the first degree and armed criminal action. He pleaded guilty in 2004 to robbery in the second degree and armed criminal action, in 2009 to assault in the second degree, and in 2015 to assault in the third degree. Based upon his experience with the criminal justice system, Defendant was at least "minimally familiar with the trial process, including possible defenses to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged." *Id.* at 313 (quoting *Black*, 223 S.W.3d at 156).

In sum, Defendant has failed to establish that his waiver of counsel was not knowing, voluntary, and intelligent. *See id.* Thus, the trial court did not err in allowing Defendant to represent himself at trial. Point I is denied.

<u>Point II</u>

In his second point, Defendant argues the trial court erred in finding Defendant competent to proceed to trial without conducting a hearing in violation of Section 552.020.

*Preservation*

The State argues that Defendant failed to preserve this point for appeal because the claim of error was not adequately alleged in the motion for new trial. The State reasons that "allegations in a motion for new trial must be sufficiently definite to direct the trial court's attention to the particular acts or rulings asserted to be erroneous." The State concludes that the general nature of the defendant's allegation of error is problematic because it was not based upon an objection made at trial.

At no time prior to or during trial did Defendant object to the failure to hold a competency hearing. In his motion for new trial, Defendant alleged for the first time that "the case proceeded to and through a trial, where defendant was incompetent due to mental illness and/or traumatic brain injury." We find this allegation insufficient to preserve Defendant's point on appeal. The allegation in Defendant's motion for new trial did not adequately and specifically apprise the trial court of Defendant's point that the court erroneously found Defendant competent and failed to hold a competency hearing. Therefore, we may review only for plain error. *State v. Dunagan*, 772 S.W.2d 844, 850 (Mo. App. S.D. 1989).

*Standard of Review*

11

Plain error review is a two-step process. *State v. Wilson*, 692 S.W.3d 54, 65 (Mo. App. E.D. 2024). "First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice." *Id.* "If so, we may then consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.* "Plain-error review requires that the alleged error have a decisive effect on the verdict." *Id.*

*Analysis*

"No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or her or to assist in his or her own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Section 552.020.1. "Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, the judge shall, upon his or her own motion or upon motion filed by the state or by or on behalf of the accused," order examination of the accused. Section 552.020.2. A report of the examination shall include:

(1) Detailed findings;
(2) An opinion as to whether the accused has a mental disease or defect;
(3) An opinion based upon a reasonable degree of medical or psychological certainty as to whether the accused, as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or her or to assist in his or her own defense;
(4) An opinion, if the accused is found to lack capacity to understand the proceedings against him or her or to assist in his or her own defense, as to whether there is a substantial probability that the accused will be mentally fit to proceed in the reasonably foreseeable future. . .

Section 522.020.3. Within ten days after the filing of the report, either the State or defendant "shall, upon written request, be entitled to an order granting them an examination of the accused by a psychiatrist or psychologist . . . or a physician . . . of their own choosing and at their own

12

expense." Section 522.020.7. If neither party requests a second examination or contests the findings of the initial report, "the court shall make a determination and finding on the basis of the report filed or hold a hearing on its own motion. If any such opinion is contested, the court shall hold a hearing on the issue." Section 522.020.8.

"The fact an examination has been ordered under § 552.020 does not automatically. . . require a court to *sua sponte* hold a hearing to determine such competency." *State v. Mette-Njuldnir*, 465 S.W.3d 521, 529 (Mo. App. W.D. 2015) (quoting *State v. Lee*, 660 S.W.2d 394, 397 (Mo. App. S.D. 1983)). "Rather 'a hearing on competency is required only when the psychiatric report is contested.'" *Id.* (quoting *State v. Mayfield*, 562 S.W.2d 404, 407 (Mo. App. 1978)). "There is no error in failing to have a competency hearing when a report is not contested." *Id.* at 530 (quoting *State v. Vansandts*, 540 S.W.2d 192, 201 (Mo. App. 1976)). "To contest a mental evaluation report, a party must first controvert the report's ultimate conclusion regarding mental competence by challenging either the competency of the examiner or the validity of the procedures used." *Id.* (quoting *State v. Grant*, 560 S.W.2d 384, 388 (Mo. App. 1977)) (internal quotation marks omitted).

Here, the trial court, in a pre-trial hearing asked the parties if they were ready to set the case for trial, "inasmuch as the Department of Mental Health has determined that the defendant is competent to stand trial and to participate in the proceedings." The State announced it was ready to proceed. Defendant objected to the proceedings generally and demanded a dismissal because of "habeas corpus, and everything in the record." The trial court overruled the objection, set the case for trial, and took no other action regarding Defendant's competency.

Defendant argues the pre-trial hearing failed to comport with the due process requirements set forth in *Dusky v. United States*, 362 U.S. 402 (1960), *Pate v. Robinson*, 383

13

U.S. 375 (1966), and *Drope v. Missouri*, 420 U.S. 162 (1975). The State retorts that Defendant's argument ignores the statutory requirements of Section 552.020, *Pate* is inapplicable, and *Drope* required the court to hold a hearing only if the results of the examination were contested.

The trial court's finding Defendant competent and forgoing a competency hearing was not error, let alone evident, obvious, and clear error. *See Mette-Njuldnir*, 465 S.W.3d at 529-30. A competency hearing is required only if the competency report is contested. *Id.* at 529; Section 522.020.8. Defendant points out that, a week after the trial court scheduled the mental competency evaluation, Defendant filed a *pro se* response stating he would participate in the evaluation on the conditions that he would choose his own doctor to cross-examine the findings of the court's doctor and "all expenses for [his] doctor be paid in full by the court alone." Defendant's response, filed approximately 17 months before the evaluation was completed, did not purport to contest the conclusions of the evaluation. In fact, nowhere in the record did Defendant contest "the report's ultimate conclusion regarding mental competence by challenging either the competency of the examiner or the validity of the procedures used." *Mette-Njuldnir*, 465 S.W.3d at 530 (quoting *Grant*, 560 S.W.2d at 388).

Without an adequate contest by either party, "the court shall make a determination and finding on the basis of the report filed or hold a hearing on its own motion." Section 552.020.8. Here, the trial court made a clear determination and finding of Defendant's competency on the basis of the report and was free to proceed without a hearing.

For these reasons, we decline plain error review. Point II is denied.

Point III

In his third point, Defendant argues the trial court erred in failing to order a mental evaluation pursuant to Section 552.020 after he was convicted and before he was sentenced.

*Standard of Review*

14

"The trial court has broad discretion in denying a defendant's motion for a competency exam, but the court has a duty to confront the issue of competency at any stage of the trial." *State v. Wilkinson*, 687 S.W.3d 436, 440 (Mo. App. W.D. 2024) (quoting *State v. Tilden*, 988 S.W.2d 568, 577 (Mo. App. W.D. 1999)). "Where the issue of mental competency has been raised by motion or by the trial court, and has been decided, the standard of review is that the trial court's determination of competency must stand unless unsupported by substantial evidence, without appellate weighing of the evidence, and determining if a reasonable judge in the same situation would have experienced doubt as to competency." *Id.*

*Analysis*

"The accused is presumed competent, and carries the burden to prove incompetence by a preponderance of the evidence." *Wilkinson*, 687 S.W.3d at 441. "This burden becomes more challenging when, as occurred here, a defendant has previously been examined and determined to be competent. In such a situation, evidence must be brought forward revealing a change in circumstance since the original determination." *Id.* at 441-42.

In his motion for new trial, filed with the assistance of counsel, Defendant argued he should be evaluated pursuant to Chapter 552 prior to sentencing. In support of his argument, Defendant stated that "to the extent that some of the issues are related to a traumatic brain injury, a psychiatric interview may well be insufficient, and neurological scan, and/or neuropsychological testing may be called for." Defendant attached an affidavit from his mother stating that, when Defendant was 15 years old, a chunk of concrete fell and hit him on the head, causing traumatic brain injury. After reviewing the motion, affidavit, and court file, the trial court denied the motion.

The trial court did not abuse its discretion in opting not to order a mental evaluation under Section 552.020 after Defendant was convicted and before he was sentenced. Defendant is presumed competent and previously was found competent to proceed to trial. *See Wilkinson*, 687 S.W.3d at 441. In that circumstance, Defendant bears the burden to demonstrate his incompetence as manifested by "a change in circumstance since the original determination." *Id.* at 441-42. Defendant directs us to his childhood head injury and the sovereign citizen beliefs he extolled throughout the proceedings before the trial court as the evidentiary basis for his alleged incompetence. Obviously, Defendant's childhood injury and beliefs expressed before the trial court's original determination of competency are not "a change in circumstance since the original determination." Also, Defendant let slip during his mental evaluation that his sovereign citizen beliefs "were just a stall tactic." At any rate, as a matter of precedent, a criminal defendant's expression of sovereign citizen beliefs does not render him incompetent to waive the right to counsel and to stand trial. *Lavender*, 680 S.W.3d at 133; *Davis*, 507 S.W.3d at 44-45; *Ndon*, 583 S.W.3d at 154-55.

The trial court did not abuse its discretion in denying a second competency evaluation. Point III is denied.

Point IV

In his fourth point, Defendant argues the trial court erred in failing to grant Defendant's motion to dismiss for violation of his right to a speedy trial.

*Standard of Review*

When reviewing a trial court's ruling on a motion to dismiss for a violation of the constitutional right to a speedy trial, this Court defers to the trial court's factual findings and reviews *de novo* whether the defendant's right to a speedy trial was violated. *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015).

*Analysis*

The right to a speedy trial is found in the Sixth Amendment to the United States Constitution and article I, section 18(a) of the Missouri Constitution. The federal and Missouri constitutions "provide equivalent protection for a defendant's right to a speedy trial." *Sisco*, 458 S.W.3d at 313 (quoting *State v. Taylor,* 298 S.W.3d 482, 504 (Mo. banc 2009)). "Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 911 (Mo. banc 2010)). "The existence of any one of these factors is neither necessary nor sufficient to finding a deprivation of the right to a speedy trial." *Sisco*, 458 S.W.3d at 313.

**Length of Delay**

"First, the length of the delay is a triggering mechanism because, 'until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors.'" *Id.* (quoting *Barker*, 407 U.S. at 530). Missouri courts have found a delay of greater than eight months is "presumptively prejudicial." *Id.*

"The delay in bringing a defendant to trial is measured from the time . . . when actual restraints are imposed by an arrest." *Id.* "The delay attributable to the defendant's continuances, motion or other actions must be first subtracted from the total delay." *State v. Newman*, 256 S.W.3d 210, 214 (Mo. App. W.D. 2008) (quoting *State v. Buchli*, 152 S.W.3d 289, 308 (Mo. App. W.D. 2004)). The time required to determine the defendant's competency is also subtracted from the period of delay. *State v. Oliver*, 655 S.W.3d 407, 416-17 (Mo. App. E.D. 2022).

Approximately three years elapsed between Defendant's arrest and his trial. Approximately five months is subtracted for Defendant's competency evaluation. Another six months is subtracted for Defendant's continuance purportedly to find counsel. The resulting delay of just over two years remains presumptively prejudicial, and therefore we address the remaining *Barker* factors. *See Sisco*, 458 S.W.3d at 313.

## Reason for Delay

Different weights are assigned to the different reasons for the delay. *Sisco*, 458 S.W.3d at 313. The Missouri Supreme Court in *Sisco* elucidated that:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . . Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 314 (quoting *Barker*, 407 U.S. at 531). "Delays attributable to the defendant weigh heavily against the defendant." *Id.* (quoting *State v. Greenlee,* 327 S.W.3d 602, 612 (Mo. App. S.D. 2010)).

Nothing in the record indicates the State deliberately delayed the trial in order to hamper the defense. *See Sisco*, 458 S.W.3d at 314 (quoting *Barker*, 407 U.S. at 531).The State did obtain a two-week continuance because one of its essential witnesses was unavailable for the scheduled trial date. This justified delay does not weigh against the State. *Id.* (quoting *Barker*, 407 U.S. at 531). The case's slow pace in 2022 weighs neutrally, but the State still maintains the burden to pursue the case. *Id.* (quoting *Barker*, 407 U.S. at 531).

In 2021, Defendant failed to appear, requiring the case to be continued for two months. Defendant also requested and received a six-month continuance to retain counsel, which he ultimately did not do. These delays weigh heavily against Defendant. *Id.*

Defendant's case generally was delayed in 2020 due to the COVID-19 pandemic, which is not weighed against either party. *State v. Heidbrink*, 670 S.W.3d 114, 129 (Mo. App. E.D.

2023); *State v. Summers*, 653 S.W.3d 155, 164 (Mo. App. W.D. 2022); *Oliver*, 655 S.W.3d at 417. The delays due to the court-ordered mental evaluation and continuances by the trial court without a specified reason in late 2021 likewise are not attributed to either side.

In sum, the reasons for delay weigh against Defendant.

**Defendant's Assertion of His Speedy Trial Right**

"The third factor to be considered is whether and how the defendant asserted his right to a speedy trial." *Sisco*, 458 S.W.3d at 316. "There is no rigid requirement regarding when a defendant must assert his right to a speedy trial." *Id.* "Instead, courts will weigh the timeliness of the assertion and the frequency and force of a defendant's objections." *Id.*

Defendant first asserted his right to a speedy trial in a motion to dismiss on January 4, 2021. That Defendant raised the issue in a motion to dismiss, rather than a motion for an immediate trial, indicates Defendant was trying to avoid trial altogether as opposed to demanding a speedy trial. *See State v. Henry*, 696 S.W.3d 59, 72 (Mo. App. S.D. 2024); *Hollings v. State*, 662 S.W.3d 821, 833 (Mo. App. E.D. 2023); *Newman*, 256 S.W.3d at 216; *State v. Nelson*, 719 S.W.2d 13, 19 (Mo. App. W.D. 1986). Defendant also waited seven to eight months from his arrest to file his speedy trial request. *See Newman*, 256 S.W.3d at 216. Defendant simply did not invoke his speedy trial rights in a timely, frequent, and forceful manner. *Heidbrink*, 670 S.W.3d at 129. This factor weighs against Defendant.

**Prejudice to Defendant**

The final factor is the prejudice suffered by the defendant as a result of the delay. *Sisco*, 458 S.W.3d at 317. "Whether a delay prejudiced the defendant is evaluated in light of three concerns: '(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired.'"

19

*Id.* (quoting *Garcia*, 316 S.W.3d at 912). "Courts view the third consideration as the most serious." *Id.*

"Any claimed prejudice resulting from delay must be actual and apparent on the record or by reasonable inference." *Newman*, 256 S.W.3d at 217 (quoting *State v. Weeks,* 982 S.W.2d 825, 836 (Mo. App. S.D.1998)). "Speculative or possible prejudice is not sufficient." *Id.* "Further, the failure to present evidence of actual prejudice weighs heavily in favor of the government." *Id.* (quoting *State v. Perry,* 954 S.W.2d 554, 566 (Mo. App. S.D. 1997)).

Defendant argues prejudice resulted because confinement in jail is inherently oppressive, demoralizing, and hostile. Defendant further argues that the excessive delay caused witnesses' memories to fade.

Defendant has failed to demonstrate any actual or apparent prejudice. As to the first and second concerns, "undoubtedly, anxiety and concern exist in every criminal case, but that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Sisco*, 458 S.W.3d at 317; *Newman*, 256 S.W.3d at 217; *State v. Raine*, 829 S.W.2d 506, 513 (Mo. App. W.D. 1992) (finding three years of incarceration between arrest and trial presents minimal prejudice, but the defendant suffered no actual prejudice due to the loss of evidence or any sources of evidence). As to the third concern, Defendant argues generally that the excessive delay caused memories to fade, but specifies no actual impairment of his defense. *Sisco*, 458 S.W.3d at 317 (quoting *Garcia*, 316 S.W.3d at 912); *see also State v. Bell*, 66 S.W.3d 157, 162, 165 (Mo. App. S.D. 2001).

In sum, the prejudice factor weighs heavily in favor of the State and against Defendant. *See Hollings*, 662 S.W.3d at 834.

Based on this Court's review of each of the relevant *Barker* factors, Defendant's constitutional right to a speedy trial was not violated. Point IV is denied.

Point V

In his fifth and final point, Defendant argues the trial court plainly erred in failing to *sua sponte* declare a mistrial after the prosecution injected inadmissible evidence of Defendant's post-arrest silence and failure to volunteer exculpatory evidence or deny the charges.

*Standard of Review*

Defendant concedes his argument is not preserved and asks for plain error review. *See Wilson*, 692 S.W.3d at 65.

*Analysis*

"We are generally hesitant to convict a trial court of failure to intervene *sua sponte*, particularly during witness examination." *State v. Brown*, 619 S.W.3d 586, 590 (Mo. App. E.D. 2021). "Uninvited interference by the trial judge in trial proceedings is generally discouraged, as it risks injecting the judge into the role of a participant and invites trial error." *Id.* (quoting *State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. W.D. 2004)). Similarly, a mistrial is a drastic remedy and "as such, the trial court should only take independent action in the most unusual and exceptional circumstances." *Id.* (quoting *Roper*, 136 S.W.3d at 903); *State v. Lewis*, 707 S.W.3d 653, 656 (Mo. App. E.D. 2024).

The State may not use the defendant's silence at the time of arrest and after receiving *Miranda* warnings for impeachment purposes.[3] *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *State v. Gillespie*, 401 S.W.3d 560, 563-64 (Mo. App. E.D. 2013). This rule "does not apply if the defendant chooses not to exercise his or her right to remain silent" and instead "make[s] a

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement while in custody." *Gillespie*, 401 S.W.3d at 564. "A defendant who voluntarily speaks after receiving *Miranda* warnings may be impeached not only with his own statements but also with his selective silence." *Id.* Further, a *Doyle* violation will not occur when the defendant is not asked any specific, incriminating questions. *State v. Billings*, 522 S.W.3d 276, 282 (Mo. App. S.D. 2016).

Defendant alleges two *Doyle* violations. First, during the direct examination of Detective Crupper, the State elicited that, after Defendant was advised of his *Miranda* rights, and while Detective Crupper was explaining the charges against him, Defendant stated he did not understand the charges. Detective Crupper testified that Defendant "never denied being involved, but he never gave an excuse or anything." This testimony does not run afoul of *Doyle*. Defendant did not exercise his right to remain silent and volunteered that he did not understand the charges against him, *see Gillespie*, 401 S.W.3d at 564, and Detective Crupper did not ask any specific, incriminating questions, *see Billings*, 522 S.W.3d at 282.

Second, during cross-examination of Defendant, the State elicited that Defendant did not inform law enforcement that he had a video camera in his delivery vehicle. Again, this is not a *Doyle* violation because Defendant previously opened the door to this evidence while cross-examining Detective Crupper. *See State v. Shockley*, 410 S.W.3d 179, 194 (Mo. banc 2013); *State v. Watson,* 391 S.W.3d 18, 23 (Mo. App. E.D. 2012).

Defendant asked Detective Crupper if he came across an in-car camera during his search of Defendant's vehicle. Detective Crupper stated he did not recall. Defendant persisted, "a cab camera wouldn't be considered [of] evidentiary value to you from a vehicle involved in a shooting?" Detective Crupper answered, "Sure, if I knew that there was something on there of evidentiary value, but nobody alerted me to that." Also, Defendant himself claimed on direct-

22

examination that he kept a camera in his car, and, in closing argument, questioned the integrity of Detective Crupper's investigation for its failure to uncover the alleged camera.

Otherwise inadmissible evidence can become admissible because a party has opened the door to it through cross-examination. *Shockley*, 410 S.W.3d at 194; *Watson,* 391 S.W.3d at 23. Where "the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *Shockley*, 410 S.W.3d at 194.   Here, the State merely confirmed through cross-examination of Defendant a fact already elicited by Defendant on cross-examination of Detective Crupper – Defendant did not inform law enforcement of the alleged camera – to rebut Defendant's attack on the integrity of the investigation.

The trial court did not commit open, obvious, and clear error by failing to *sua sponte* declare a mistrial for *Doyle* violations. We decline plain error review. Point V is denied.

### Conclusion

The judgment of the trial court is affirmed.


_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

23